No. 91-539

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

GLENN E. WELCH,

Claimant and Respondent,

-vs-

AMERICAN MINE SERVICES, INC.,
and OLD REPUBLIC INSURANCE COMPANY,

Employer, Defendant and Appellant.

APPEAL FROM:    The Workers' Compensation Court,
The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Neil S. Keefer; Keefer, Roybal, Stacey & Walen,
Billings, Montana

For Respondent:

Michael P. Sand, Attorney at Law, Bozeman, Montana

Submitted on Briefs:  January 16, 1992

Decided:  April 30, 1992

Filed:

FILED

APR 3 0 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Old Republic Insurance Company appeals from the judgment of the Workers' Compensation Court that Glenn E. Welch suffered a compensable injury arising out of the course and scope of his employment on April 27, 1989. We affirm.

The sole issue is whether the Workers' Compensation Court erred in concluding that claimant sustained a compensable injury pursuant to § 39-71-119, MCA (1987).

Glenn E. Welch (Welch) was employed as a driller by American Mine Services, Inc. at a mine near Nye, Montana. His job required using heavy power drills to bore holes for mining purposes and, during some shifts, extensive walking and standing.

State and federal regulations require mine employees such as Welch to wear either steel-toed or metatarsal safety boots. A steel-toed safety boot has a steel or fiberglass cap which covers just the toes. A metatarsal boot has a steel or fiberglass toe covering which extends over the top of the foot and leather uppers which cover the ankles.

Sometime before April 27, 1989, Welch requested a new pair of steel-toed safety boots from American Mine Services, which provides free boots to its mine workers. The boots which arrived April 27, 1989, were the metatarsal type. Welch wore them to work that day. He states that the boots were a snug fit, but he expected them to loosen up with wear. Throughout his twenty-five year career working in the mines, Welch had broken in many new boots, finding

1

that normally they loosened up within a few hours.

Toward the end of an active shift on April 27, 1989, Welch noticed that his feet were beginning to get sore and his new boots were still a snug fit. Upon removing his boots at the end of the shift, Welch noticed red sores the size of a thumbnail on both the third and fourth toes of his right foot. The sores were open and draining.

Welch had difficulty sleeping the night of April 27 because of burning and pain in his foot. He treated the sores numerous times with alcohol and later with Neosporine, an antifungal antibiotic. They continued to drain throughout the night.

Welch again attempted to wear the new boots to work the next day, but his foot was extremely sore so he wore his old work boots which were looser and roomier and did not irritate his toes. Welch worked an entire shift on April 28, and thereafter was laid off due to a reduction in force.

Welch sought medical attention for his foot on May 1, 1989 when he called his family physician, Dr. Robert Flaherty. Dr. Flaherty was unable to see him until May 5, at which time Welch explained that he had worn new boots a week previously that rubbed his toes.

During this visit, Welch informed Dr. Flaherty that he had been soaking his foot and trying to reduce the amount of time he spent on his feet. Dr. Flaherty asked Welch if he had diabetes. After Welch replied in the negative, Dr. Flaherty diagnosed Welch's condition as an "abscess and cellulitis of the right fourth toe."

The doctor then prescribed further soakings and an antibiotic. In his deposition, Dr. Flaherty opined that Welch's toe became infected after the new boots rubbed the skin off his toes.

Dr. Flaherty examined and treated Welch on May 8, 10, and 12, 1989; on May 15, 1989, Welch was admitted to Bozeman Deaconess Hospital. At this time, Dr. Flaherty referred Welch to Dr. Lowell Anderson, an orthopedic surgeon, because he thought the bone of Welch's right foot might be affected. During Welch's stay at Deaconess, his right fourth toe was amputated. Dr. Anderson's post-surgery diagnosis was deep foot infection probably complicated by diabetes. Welch was released, but was hospitalized again in March of 1990 because of abscess and infection to the foot. Welch was hospitalized subsequently in October of 1990 and March of 1991.

Old Republic, American Mine Services' workers' compensation carrier, accepted Welch's claim under the Montana Occupational Disease Act and paid him disability benefits thereunder. On May 14, 1991, the Workers' Compensation Court considered Welch's claim that his injury arose out of the course and scope of his employment with American Mine Services, Inc. and was not an occupational disease. In its Findings of Fact and Conclusions of Law and Judgment dated August 21, 1991, the court found Welch's condition to be compensable under the Workers' Compensation Act of 1987. Old Republic Insurance and American Mine Services appealed.

The sole issue on appeal is whether the Workers' Compensation Court erred in concluding that claimant sustained a compensable

3

injury pursuant to § 39-71-119, MCA (1987). Because this case involves an issue of law, we will review the decision of the Workers' Compensation Court to see if it is legally correct. Stuker v. State Comp. Mutual Ins. Fund (Mont. 1991), 822 P.2d 105, 48 St.Rep. 1071; Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

Section 39-71-119, MCA (1987), is the statute at issue:

(1)   "Injury" or "injured" means:
(a)   internal or external physical harm to the body;
(b)   damage to prosthetic devices or appliances, except for damage to eyeglasses, contact lenses, dentures, or hearing aids; or
(c)   death.
(2)   An injury is caused by an accident. An accident is:
(a)   an unexpected traumatic incident or unusual strain;
(b)   identifiable by time and place of occurrence;
(c)   identifiable by member or part of the body affected; and
(d)   caused by a specific event on a single day or during a single work shift.
(3)   "Injury" or "injured" does not mean a physical or mental condition arising from:
(a)   emotional or mental stress; or
(b)   a nonphysical stimulus or activity.
(4)   "Injury" or "injured" does not include a disease that is not caused by an accident.
(5)   A cardiovascular, pulmonary, respiratory, or other disease, cerebrovascular accident, or myocardial infarction suffered by a worker is an injury only if the accident is the primary cause of the physical harm in relation to other factors contributing to the physical harm.

A compensable injury must meet all three definitional requirements contained in § 39-71-119, MCA (1987): there must be an "injury" and an "accident," and the injury must be "caused by" the accident. Old Republic contends that these requirements are not met, asserting primarily that Welch's deep foot infection took nineteen

4

days to develop, was not unexpected, and was the end result of a number of factors including his diabetes. Old Republic's approach, focusing as it does on Welch's diabetes rather than on the initial incident which led to the deep foot infection, is misplaced.

The well-established rule in Montana is that an employer takes an employee subject to the employee's physical condition at the time of employment. Shepard v. Midland Foods, Inc. (1983), 205 Mont. 146, 666 P.2d 758; Schumacher v. Empire Steel Manufacturing Co. and Employers Mutual Liability Insurance Co. (1977), 175 Mont. 411, 574 P.2d 987. With this principle as a starting premise, § 39-71-119, MCA (1987), can be considered in a clear and straightforward manner.

The parties agree that physical harm occurred to Welch's foot. Old Republic contends, however, that Welch's physical condition arose from the "nonphysical stimulus" of his diabetes; therefore, according to the appellant, § 39-71-119(3)(b), MCA (1987), prevents the condition from constituting an injury. This argument ignores the fact, undisputed on the record before us, that the sores on Welch's foot initially arose from the physical stimulus of ill-fitting boots. The requirement for an injury under § 39-71-119(1), MCA (1987), is met.

Section 39-71-119, MCA (1987), also requires that an accident occur. Old Republic contends that three of the four statutory requirements for an accident are not met in this case.

Section 39-71-119(2)(b), MCA (1987), requires that an accident be identifiable by time and place of occurrence. Old Republic

5

argues that Welch's condition does not meet this requirement because it took nineteen days for the infection to develop to a point requiring hospitalization. The record reveals, however, that Dr. Flaherty and Old Republic's expert witness agree that the infection which developed in Welch's foot initially was caused by Welch's new boots rubbing sores during his work shift of April 27, 1989. We conclude that the initial incident which ultimately led to Welch's severe infection occurred during an identifiable time, the April 27, 1989 shift, and at an identifiable place, the underground mine near Nye, Montana. Thus, § 39-71-119(2)(b), MCA (1987), is satisfied.

Similarly, Old Republic next contends that Welch's condition was the culmination of such factors as his diabetes, vascular calcification and diabetic neuropathy. Arguing that the condition is similar to those of claimants in Wear v. Buttrey Foods, Inc. (1988), 234 Mont. 477, 764 P.2d 139; McMahon v. Anaconda Co. (1984), 208 Mont. 482, 678 P.2d 661; and Whittington v. Ramsey Construction Co. and Fabrication (1987), 229 Mont. 115, 744 P.2d 1251, Old Republic asserts that the time definiteness required by § 39-71-119(2)(d), MCA (1987), is not met.

The physical conditions in the cases relied on by Old Republic were brought about by many years of repetitious activity or exposure to pollutants; as a result, we held that they lacked the time definiteness required. The facts before us are not analogous. Here, an initial and identifiable incident of physical harm occurred on April 27, 1989, when Welch's ill-fitting boots rubbed

6

sores on his foot. As discussed previously, Old Republic's focus on complications subsequent to that initial incident is misplaced. The initial incident was a "specific event . . . during a single work shift" as required by § 39-71-119(2)(d), MCA (1987).

Finally, § 39-71-119(2)(a), MCA (1987), requires that an accident be an unexpected and traumatic incident or unusual strain. Old Republic argues that Welch's deep foot infection was to be expected because he was a diabetic.

The common meaning of "unexpected" is "unlooked for, unforeseen, surprising." Webster's Third International Dictionary (1971). We note that the 1987 amendments to § 39-71-119, MCA, retain the word "unexpected" from the pre-1987 definition of injury. In Bremer v. Buerkle (1986), 223 Mont. 495, 727 P.2d 529, we affirmed the Workers' Compensation Court's decision that a worker's allergic contact dermatitis constituted an injury because it met the "unexpected" requirement of the statute. In Bremer, the claimant had been working with the same chemicals for nine years without sustaining any allergic reaction. We concluded that, despite this ongoing contact, the chemical contact which occurred on one day unexpectedly stimulated his immune system and led to an allergic reaction. In a similar fashion, Welch had experienced no problems in breaking in new safety boots during his many years of working in mines. Despite this twenty-five year history, the new boots he wore on April 27, 1989, rubbed sores on his foot which became infected. We conclude that the incident was unexpected under § 39-71-119(2)(a), MCA (1987).

7

Old Republic also contends that the use of the word "traumatic" necessitates the presence of force or violence, neither of which is present under the facts of this case. Webster's Third International Dictionary (1971) defines "trauma" as "an injury or wound to a living body caused by the application of external force or violence." Old Republic's expert witness, Dr. Robert Nielson, when asked during his deposition whether Welch's blisters could be considered a trauma, responded: "Sure." Dr. Nielsen continued to refer to the rubbing of Welch's toes as a trauma to the foot. We conclude that the rubbing of the ill-fitting boots was a traumatic incident under § 39-71-119(2)(a), MCA (1987).

Welch sustained an injury and an accident under § 39-71-119(1) and (2), MCA (1987). The only remaining question is whether the accident "caused" the injury, as also required by § 39-71-119, MCA (1987).

Arguing against this causal link, Old Republic asserts that under § 39-71-119(4), MCA (1987), Welch's diabetes is a disease that is not caused by an accident. Old Republic is correct; however, Welch's diabetes is not at issue here. The diabetes predated the injury to Welch's foot on April 27, 1989. While the diabetes apparently resulted in more severe complications from the initial incident than would have been experienced by a nondiabetic, the initial incident constitutes an injury under § 39-71-119, MCA (1987).

Similarly, Old Republic presents a somewhat convoluted argument that Welch's diabetes is an "other disease" under § 39-71-

8

119(5), MCA (1987), which does not constitute an injury. Old Republic asserts that the initial abrasions were not the primary cause of Welch's physical harm in relation to other factors which produced the deep foot infection. We considered the meaning of "primary cause" under § 39-71-119(5), MCA (1987), in Gaumer v. State Compensation Insurance Fund (1990), 243 Mont. 414, 795 P.2d 77. In Gaumer, the claimant had a history of respiratory ailments prior to her work-related accident involving toxins in the work place. We found that claimant's condition was compensable under the Workers' Compensation Act:

> [T]he drastic change in the claimant's medical condition was primarily caused by the accident in the work place where she was exposed to chemical toxins or allergens, it was not merely the progressive result of her pre-existing respiratory ailments.

Gaumer, 243 Mont. at 420, 795 P.2d at 80-81. Likewise, the significant change in Welch's physical condition was primarily caused by the injury and accident which occurred when his ill-fitting safety boots rubbed abrasions on his foot. While the diabetes may have exacerbated the ultimate severity of the original injury, Welch's medical condition was not merely the progressive result of his pre-existing diabetes.

Old Republic makes a final argument, without supporting authority, that the 1987 amendments to the Workers' Compensation Act were intended to substantially restrict the definitions of "injury" and "accident." Because the plain meaning of the words used in the statute is determinative in this case, consideration of the legislative history is inappropriate. State ex rel. Roberts v.

9

PSC (1990), 242 Mont. 242, 790 P.2d 489.

We conclude that the rubbing of sores on Welch's toes meets the statutory requirements for an injury and an accident, and that the accident caused the injury. We hold that the Workers' Compensation Court did not err in concluding that claimant sustained a compensable injury pursuant to § 39-71-119, MCA (1987).

Affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices