No. 95-218

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

PAULA MOORE,

     Petitioner and Respondent,

  v.

STATE COMPENSATION INSURANCE FUND,

     Respondent and Appellant,
     and Insurer

  for

DAVIS MAINTENANCE COMPANY,

     Employer.

APPEAL FROM:  Workers' Compensation Court,
             The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Charles G. Adams, Legal Counsel,
          State Compensation Insurance Fund,
          Helena, Montana

     For Respondent:

          Thomas A. Budewitz, Attorney at Law,
          Helena, Montana

Submitted on Briefs:  September 7, 1995

Decided:  November 21, 1995

FILED

NOV 21 1995

Filed:  Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Paula Moore filed a petition for hearing in the Workers' Compensation Court for the State of Montana in which she sought payment of medical benefits by the State Compensation Insurance Fund for an injury which she claimed was work related. After a hearing, the Workers' Compensation Court held that Moore was entitled to medical benefits for her injury. The State Fund appeals from this determination. We affirm the findings, conclusions, and judgment of the Workers' Compensation Court.

The issue on appeal is:

Did the Workers' Compensation Court err when it found that Moore's back injury is work related and concluded that she is entitled to continued medical benefits for the treatment of that injury?

### FACTUAL BACKGROUND

On January 8, 1993, Paula Moore injured her lower back and neck while throwing bags of garbage into a garbage bin at work. At the time of the accident, Moore was employed as a janitor with Lonnie Davis Maintenance Company (Davis). Davis was insured by the

2

State Fund, which accepted liability and paid wage loss benefits to Moore from February 3, 1993 through July 20, 1993.

Moore was initially treated for her injuries by Dr. William Batey, who diagnosed her condition as lumbar strain and cervical strain. Dr. Batey prescribed Relafen (an anti-inflammatory drug), physical therapy, and no work for one week. When her condition did not improve by February 1993, however, Dr. Batey referred Moore to Dr. Allen Weinert, a physiatrist, for a further evaluation.

Dr. Weinert first examined Moore on April 9, 1993. He recommended continued physical therapy, and prescribed Naprosyn (an anti-inflammatory drug) and Flexeril (a muscle relaxant). He also approved her return to work in a "modified janitorial position."

Moore arranged a modified position with Davis in which she could slowly increase her time at work to five hours per day. Before she could return to work, however, Moore experienced a flare-up of her condition. On April 13, 1993, Dr. Weinert determined that Moore's return to work should be postponed for one week. He also concluded that a job as bartender, which Moore had performed as a second job before her injury, was within her capabilities.

Dr. Weinert examined Moore again on May 11, 1993, and noted that her symptoms were essentially unchanged. Dr. Weinert renewed Moore's prescriptions and encouraged her to participate in physical therapy. Dr. Weinert noted that Davis had "decided not to take [Moore] back," and released her to work as a waitress for four

3

hours per day. As of May 13, 1993, Dr Weinert did not feel that Moore had reached maximum medical improvement.

In May, Moore returned to her job as a waitress, where she worked four to six hours per week. At trial, she reported that she continued to suffer back pain during that time. Moore was terminated from her employment in May or June 1993. She has not been employed since.

Moore next saw Dr. Weinert on July 26, 1993. She reported at that time that her back pain was much improved, although she still experienced some occasional low back pain. Dr. Weinert concluded that Moore had reached maximum medical improvement and that there was no basis for a permanent impairment rating. He released Moore to return to her former jobs as janitor and bartender.

On August 26, 1993, Moore returned to Dr. Weinert with complaints of increased low back pain, and pain and stiffness in the neck region. Dr. Weinert renewed her prescription for Relafen, and recommended physical therapy and lumbar stabilization exercises.

Moore returned to Dr. Weinert on September 20, 1993, for a follow-up appointment. She reported an acute flare-up in her condition following a day spent cleaning a trailer home before she moved into it. Dr. Weinert diagnosed "chronic musculoligamentous low back pain." He refilled her Relafen prescription and emphasized the importance of completing her physical therapy.

4

Dr. Weinert wrote to the State Fund on September 20, 1993. Responding to questions raised by the State Fund, he said:

> Ms. Moore re-exacerbated her musculoligamentous low back pain in early August. . . . I do feel that her condition is temporary, however, she has not received the treatment that was recommended at this time and has re-aggravated her back one week ago when moving into her trailer. Prognostically I feel Ms. Moore's condition should resolve with appropriate treatment, although she will be predisposed to recurrent injury.

The State Fund refused to pay further benefits to Moore for treatment on and after August 26, 1993. The State Fund maintained that Moore's condition in August 1993 was related to a subsequent nonwork-related injury.

At trial, Moore testified that she was never completely free of pain between July 26 and August 26. She stated that there had been occasional flare-ups throughout that time. Moore testified that such activities as doing the dishes, taking long car rides, and going on walks worsened her condition. On the day that her symptoms reoccurred while cleaning her trailer, she was "just trying to clean the cupboards, vacuum, dust."

In his deposition, Dr. Weinert testified that Moore's condition on August 26, 1993, was "consistent with a flare-up of her condition" and acknowledged that it was related to her original injury which occurred at work.

The Workers' Compensation Court concluded that Moore's pain did not arise from any new trauma, specific event, or injury. The court held that the State Fund had failed to prove that Moore suffered a nonwork-related injury after reaching maximum healing,

as provided in § 39-71-407(5), MCA. It further held that Moore is entitled to continued medical benefits for her back condition.

## DISCUSSION

The sole issue on appeal is whether the Workers' Compensation Court erred when it found that Moore's continuing symptoms are due to a work-related injury and concluded that Moore is entitled to continued medical benefits for the treatment of that injury.

We employ two standards of review for workers' compensation court decisions: We review the findings of fact to determine if they are supported by substantial, credible evidence, and we review conclusions of law to determine if they are correct. *Turjan v. Valley View Estates* (Mont. 1995), 901 P.2d 76, 79, 52 St. Rep. 740, 741-42 (citing *Caekaert v. State Compensation Mutual Ins. Fund* (1994), 268 Mont. 105, 111, 885 P.2d 495, 498).

The State Fund maintains that Moore suffered a new "injury" while cleaning her trailer and that it is thereby relieved of liability pursuant to § 39-71-407(5), MCA, which provides:

> If a claimant who has reached maximum healing suffers a subsequent nonwork-related <u>injury</u> to the same part of the body, the workers' compensation insurer is not liable for any compensation or medical benefits caused by the subsequent nonwork-related injury.

(Emphasis added.)

Section 39-71-119, MCA (1993), provides:

> (1) "Injury" or "injured" means:
> (a) internal or external physical harm to the body;
> (b) damage to prosthetic devices or appliances, except for damage to eyeglasses, contact lenses, dentures, or hearing aids; or

6

(c) death.

(2) An injury is caused by an accident. An accident is:

(a) an unexpected traumatic incident or unusual strain;

(b) identifiable by time and place of occurrence;

(c) identifiable by member or part of the body affected; and

(d) caused by a specific event on a single day or during a single work shift.

Moore initially has the burden of proving that her prior work-related injury was the cause of her later disability. *Lee v. Group W Cable TCI of Montana* (1990), 245 Mont. 292, 295, 800 P.2d 702, 705. Once she has established a causal connection between her current condition and her January 1993 accident, the burden shifts to the State Fund. *Lee*, 800 P.2d at 705. The State Fund must then demonstrate that a subsequent accident caused Moore's current condition.

The Workers' Compensation Court found that the medical evidence supported Moore's contention that her current condition was causally related to the January 1993 injury. We conclude that this finding was supported by substantial evidence. Dr. Weinert testified with a reasonable degree of medical certainty that Moore's condition was a "flare-up" of her preexisting condition. He described her condition in August 1993 as "nearly synonymous" with her earlier compensable work-related injury. When asked if he considered Moore's condition to be a new injury, he testified that it was not.

7

The State Fund contends that the events which occurred while Moore cleaned her trailer satisfy the requirement that there be an "accident" which causes an "injury," as defined in § 39-71-119, MCA. The State Fund asserts that although Moore was not involved in one isolated, discrete event while cleaning her trailer, it is sufficient that all activities which produced additional symptoms occurred on one day and that the physical result was unexpected. According to the State Fund, because the events occurred on one day at a single location, and because Moore suffered "harm to the body," as required by § 39-71-119(1)(a), MCA, Moore's condition was most likely the result of a new "injury." The State Fund relies on *Welch v. American Mine Services, Inc.* (1992), 253 Mont. 76, 831 P.2d 580, to support its position. We hold that *Welch* is inapposite.

An injury must meet all three requirements of § 39-71-119, MCA: there must be an "injury" and an "accident," and the injury must be caused by the accident. *Welch*, 831 P.2d at 584. The 1987 amendments to the Workers' Compensation Act specifically require that an accident be "identifiable by time and place of occurrence" and be "caused by a specific event on a single day or during a single work shift." Section 39-71-119(2)(b) and (d), MCA (emphasis added). In *Welch*, we held that an infection caused by the claimant's new boots rubbing sores on his feet during a single day of work constituted a "specific event . . . during a single work shift," and thus met the accidental injury requirement of § 39-71-119, MCA. *Welch*, 831 P.2d at 584-85. Our holding was based

8

on the fact that there was a single, identifiable event--the rubbing of the boots--which caused the claimant's injury.

In this case, the State Fund has failed to identify a specific incident during Moore's day of cleaning (i.e., vacuuming or lifting a box) that caused Moore's back pain. Moore testified that she had been performing normal household cleaning duties when her symptoms reoccurred. Unlike the claimant in *Welch*, who could point to his tight boots as the cause of his pain, Moore could not identify a specific cause of her back pain. While Moore's condition may have arisen as a consequence of a single day of cleaning, her pain was not attributable to a "specific event" at an identifiable time, as required by § 39-71-119(2)(a), MCA.

The State Fund further contends that although Moore did not suffer an "unexpected traumatic incident," she did suffer an "unusual strain," as required by § 39-71-119(2)(a), MCA, because the symptoms she experienced following her activity on that date were unexpected. However, according to the testimony of her treating physician, it was not unexpected that following her original injury she would experience flare-ups of her symptoms based on normal activities. In fact, Dr. Weinert testified that based on her original injury, a flare-up could occur from something as trivial as rolling over in bed.

We conclude that the Workers' Compensation Court's finding that Moore did not sustain a new injury while cleaning her trailer is supported by substantial evidence, and therefore, that the

9

Workers' Compensation Court correctly concluded that the State Fund is not relieved of liability for her continued medical expenses pursuant to § 39-71-407(5), MCA.

We affirm the judgment of the Workers' Compensation Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10