No. 90-279

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

JON E. LEE,

        Claimant and Appellant,

    v.

GROUP W CABLE TCI OF MONTANA,

        Employer,

    and

PACIFIC EMPLOYERS INSURANCE CO.,

        Insurer and Respondent.

APPEAL FROM:    The Workers' Compensation Court of the
                State of Montana,
                The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Richard J. Martin, Esq., Alexander, Baucus &
            Linnell, Great Falls, Montana

        For Respondent:

            William O. Bronson, Esq., James, Gray &
            McCafferty, Great Falls, Montana

                                Submitted on Briefs:  October 19, 1990

                                        Decided:  November 8, 1990

Filed:

_____
                Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Jon E. Lee appeals the judgment of the Montana Workers' Compensation Court, which held that Lee's 1986 back injury, sustained in the course and scope of his employment, was not the proximate cause of his current permanent partial disability. Rather, the court held that Lee's current disability resulted from a separate injury occurring on January 25, 1989, and denied Lee indemnity benefits for his current disability under §§ 39-71-703 to -709, MCA (1985). We affirm.

Lee raises the following issues on appeal:

1. Did Pacific Employers Insurance Company sustain its burden of proof that a subsequent injury caused Lee's disability?

2. Did Lee's subsequent 1989 injury extinguish a permanent partial disability entitlement from his previous 1986 injury?

Jon E. Lee has been employed by a cable television company in Great Falls, Montana, since 1973. Lee was originally hired as an installer, later promoted to a service technician, and for the past fourteen years, has served as a system technician. All of these employment positions involve physical, outdoor duties.

Lee reported back injuries on three different occasions while in the course and scope of his employment. First, on June 14, 1984, Lee injured his back while replacing defective cable located under a driveway at a Great Falls residence. Lee filed a claim for compensation with the Montana Division of Workers' Compensation on December 20, 1984. Lee's treating medical physician, Dr. John

2

Molloy, diagnosed Lee's injury as muscle tension and prescribed muscle relaxants for his condition. According to his claim for compensation, Lee missed eleven days of work from this injury.

Second, on August 15, 1986, Lee injured his back while replacing cable in a four-foot-deep trench. Lee filed a claim for compensation with the Montana Division of Workers' Compensation around August 29, 1986. Lee obtained the services of Dr. William Pardis, and later Dr. Jim Pardis, both chiropractors. Dr. William Pardis initially diagnosed Lee's injury as lumbar radiculitis, and prescribed manipulation treatments. Dr. Jim Pardis concurred in this diagnosis. Lee received 232 chiropractic treatments from the chiropractors over a period of about three years, these treatments being labeled primarily as maintenance treatments. Lee returned to work on the day following this injury according to his filed claim for compensation.

Third, on January 25, 1989, Lee injured his back on the job while unloading a thirty-eight-pound piece of equipment known as a sweeper from his truck. Lee filed a claim for compensation following this incident. Dr. Jim Pardis stated that this injury was both an exacerbation of the 1986 injury and a new injury because it was in the same location in the back but more extensive. Unlike the two previous injuries, Lee missed approximately three months of work following this 1989 injury.

An independent medical examination was conducted by Dr. Robert Chambers, an orthopedic surgeon, on March 9, 1989. Dr. Chambers

diagnosed Lee to have chronic lumbar strain syndrome. When asked if he thought Lee's disability was caused by a recurrence of the same condition or an aggravation or increase of a condition, Dr. Chambers responded:

> I think to analyze Mr. Lee's case from my standpoint, I would say that he was treated in the so-called conservative or standard way by Dr. Molloy back in the early 1980's, and yet he was not rehabilitated or treated with the view of prevention and correcting the underlying deficits, which I think in most cases, as I said, are relative weakness of the trunk muscles and a lack of knowledge of proper body mechanics and work skills related to that. And I would look at it that way, rather than saying this is an injury that he had for six or seven years. An injury is an incident, to my mind, and an injured part heals itself.

Underwriters Adjusting Company was the carrier at risk for the 1984 injury, which is not the subject of this litigation. Pacific Employers Insurance Company (Pacific) is the insurer for Lee's 1986 and 1989 injuries. Medical benefits have been paid by Pacific on both injuries.

On July 17, 1989, Lee petitioned the court for trial stating that his 1986 injury resulted in a permanent partial impairment and that he was entitled to indemnity benefits under §§ 39-71-703 to -709, MCA (1985), statutes amended or repealed by the 1987 Montana Legislature. At Lee's trial, Dan Schara, a certified rehabilitation counselor, testified regarding Lee's vocational assessment. Schara, who was unaware of Lee's 1989 injury when he made his report, opined that due to Lee's current disability, Lee would be

unable to continue working at his present job, and his pre-injury labor market was reduced by 67percent.

On May 15, 1990, the court found that Lee's "current disability, is related to his January, 1989 injury" and thereby, any laws in effect in 1986 were inapplicable to Lee's current disability. From this decision, Lee appeals.

1. Did Pacific Employers Insurance Company sustain its burden of proof that a subsequent injury caused Lee's disability?

The underlying question in both issues presented on appeal is whether Lee's 1986 injury or his 1989 injury proximately caused his current permanent partial disability. If it were held that Lee's 1986 injury proximately caused his current disability, Lee would be entitled to either receive, 1) benefits based on his actual loss of earning capacity or, 2) indemnity benefits based on his prospective loss of earning capacity under the 1985 Workers' Compensation Act; these provisions were amended by the 1987 Montana Legislature. Thus, Lee would receive more benefits if it were held that his 1986 injury proximately caused his current disability.

Lee first argues that Pacific failed to prove that Lee's disability was caused by his 1989 injury. Pacific disagrees with how Lee framed this issue. Pacific argues that in order for the burden of proof to shift to Pacific, Lee must first prove that his 1986 injury was the cause of his current disability entitling him to indemnity benefits under §§ 39-71-703 to -709, MCA (1985).

Ricks v. Teslow Consolidated (1973), 162 Mont. 469, 483-84, 512 P.2d 1304, 1312-13. Pacific further argues that Lee failed to meet this burden of proof. We agree.

In reviewing a decision of the Workers' Compensation Court, the standard of review is whether substantial credible evidence exists to support the court's findings of fact and conclusions of law. O'Brien v. Guaranty Fund Services (Mont. 1990), 47 St.Rep. 251, 254 (citations omitted). Clearly, the evidence in this case does not support the premise that Lee's 1986 injury was the proximate cause of his current disability. Rather, the evidence establishes a direct link between Lee's 1989 injury and his current disability. Lee returned to work the day following his 1986 injury and worked steadily until the 1989 injury, nearly two and one-half years later. Following his 1989 injury, Lee missed approximately three months of work, this evidence indicating the significance of his 1989 injury in relation to his current disability. Medical testimony by Dr. Pardis and Dr. Chambers indicate that Lee suffered two back injuries. Dr. Pardis stated that Lee's 1989 injury was both an exacerbation of the 1986 injury and a new injury. Dr. Chambers stated that Lee suffered two injuries and that "[a]n injury is an incident, to my mind, and an injured part heals itself."

Lee further argues that his 1989 injury was a "recurrence" of his 1986 injury as opposed to being a separate event. Lee's argument has no merit in light of Belton v. Hartford Accident &

6

Indemnity Co. (1983), 202 Mont. 384, 387-89, 658 P.2d 405, 408-09, where we held that liability for ultimate disability would rest upon the injury which had not reached a state of "maximum healing."

In Belton, the claimant suffered two back injuries while in the scope and course of his employment, each injury covered by a different insurer. The claimant suffered a permanent total disability following the second back injury. The two insurance companies were the litigants in this matter, with the issue being which company was liable for the benefits to the claimant. This Court held that the insurer at the time of the second injury was liable for benefits relating to a permanent total disability when the claimant reached "maximum healing" from his first back injury prior to the time of the second back injury. "'[M]aximum healing' . . . conveys the message that the claimant's condition ha[s] arrived at a point where it [will] get no better even though the claimant . . . still [has] symptoms of the injury whether it be an objective sign or a subjective symptom such as pain." Belton, 658 P.2d at 406.

Although Belton dealt primarily with the issue of liability between two insurance companies, the "maximum healing" rule can be applied here to determine which injury proximately caused Lee's current disability. Here, Lee lost no work time following his 1986 injury. Nearly two and a half years elapsed between the 1986 injury and the 1989 injury; although Lee did report occasional pain and other incidences of discomfort in 1986 and continued manipula-

7

tive treatments with Dr. Pardis, Lee continued to perform his normal work duties steadily up until his January, 1989, injury. Based on the above, we hold that substantial evidence exists to conclude that Lee reached "maximum healing" from his 1986 injury prior to his 1989 injury, and therefore, Lee's 1989 injury was the proximate cause of his current disability.

2. Did Lee's subsequent 1989 injury extinguish a permanent partial disability entitlement from his previous 1986 injury?

Alternatively, Lee argues that even if his 1989 injury is deemed a separate injury, he is still entitled to indemnity benefits under §§ 39-71-703 to -709, MCA (1985), for his 1986 injury. Lee's argument lacks merit, as we have already determined that Lee's permanent partial disability was proximately caused by his 1989 injury.

Moreover, as Pacific's brief indicates, the uncontroverted facts of this case reveal that Lee lost no time from work as a result of his 1986 injury. Although he continued to report instances of pain and discomfort, he lost no work wages from his 1986 injury. No effort was made in the months after his 1986 injury to evaluate his functional capacities, measure his labor market, and otherwise make a determination of what future loss of earning capacity he might have as a result of this injury. Rather, all such data was gathered after Lee's 1989 injury, the injury which resulted in Lee's approximate three-month absence from work,

8

and according to Lee, resulted in the most pain and suffering. We therefore uphold the Workers' Compensation Court's holding that any benefits owed to Lee for his permanent partial injury are subject to the laws in effect at the time of his 1989 injury.

Affirmed.

_____
Chief Justice

We concur:

_____
_____
_____
_____
Justices