No. 91-205

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

M. E. DAVEY,

      Plaintiff and Appellant,

  v.

EDWARD M. NESSAN, JOAN E. NESSAN, DONALD E.
DUBEAU and CONNECTICUT MUTUAL LIFE INSURANCE
COMPANY, a Connecticut corporation,

      Defendants, Respondents and Appellants,

HORTON B. KOESSLER, as Personal Representative
of the Estate of HORACE H. KOESSLER, Deceased,

      Plaintiff and Appellant,

  v.

EDWARD M. NESSAN, DONALD E. DUBEAU, and
CONNECTICUT MUTUAL LIFE INSURANCE COMPANY,
a Connecticut corporation,

      Defendants, Respondents and Appellants.

FILED

APR 9 - 1992

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Sixteenth Judicial District,
                In and for the County of Rosebud,
                The Honorable Joe Hegel, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          David A. Veeder, Veeder & Broeder, Billings, Montana
          (Davey & Koessler); David R. Paoli, Edwards & Paoli,
          Billings, Montana (Dubeau)

      For Respondents:

          W. Anderson Forsythe, Moulton Law Firm, Billings,
          Montana (Connecticut Mutual); Vicki W. Dunaway,
          Billings, Montana (Nessan)

                      Submitted on Briefs:  December 4, 1991

                               Decided: April 9, 1992

Filed:

                           Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On February 5, 1988, M. E. Davey filed a complaint against Edward M. Nessan, Joan E. Nessan, Donald E. DuBeau, and Connecticut Mutual Life Insurance Company in the Sixteenth Judicial District Court in Rosebud County. On the same day, Horton B. Koessler filed a complaint in the name of Horace H. Koessler in the same court and against the same parties, omitting only Mrs. Nessan.[*] DuBeau and Nessan answered and asserted a cross-claim against Connecticut Mutual. On December 29, 1990, the District Court granted summary judgment for Connecticut Mutual, dismissed all of the claims against it, and entered judgment in its favor. All of the other parties appeal. We affirm.

The issue on appeal is whether the District Court erred when it ruled that all claims against Connecticut Mutual failed due to the absence of any contractual obligation by Connecticut Mutual to assume the debts of DuBeau and Nessan.

Davey and Koessler owned contiguous farms adjacent to the Candee farm in Rosebud County. The Candee property was a dry-land farm, but the Davey and Koessler farms had center-pivot irrigation.

DuBeau and Nessan bought the Candee property on a contract for deed in 1980. DuBeau and Nessan then began planning to buy the

_____

[*] Mrs. Nessan was a party to the Davey contract but not the Koessler contract. Because the claims of Mr. and Mrs. Nessan in the Davey action are identical to the claims of Mr. Nessan alone in the Koessler action, references to "Nessan" in this opinion include the claims of Mrs. Nessan.

2

Davey and Koessler properties under contracts for deed with the intention of operating all three farms as a unit. Their plan envisioned relocating the center-pivot irrigation system on the Davey and Koessler farms to the Candee farm, and replacing it with a newer lineal irrigation system.

On November 12, 1980, Connecticut Mutual offered to loan DuBeau and Nessan more than $1.8 million in order to make the necessary down payments and capital investments. Connecticut Mutual offered DuBeau and Nessan a favorable interest rate in exchange for an option to acquire a one-half interest in the property if the venture proved to be profitable. In turn, Connecticut Mutual took a security interest in DuBeau's and Nessan's purchasers' interest in the three contracts for deed. DuBeau and Nessan accepted Connecticut Mutual's offer.

Thus, in the development of this project DuBeau and Nessan incurred two different types of indebtedness: (1) their underlying debts to Candee, Davey, and Koessler on the three contracts for deed; and (2) their subsequent debt to Connecticut Mutual.

In order to protect its security interest in DuBeau's and Nessan's purchasers' interest against foreclosure, Connecticut Mutual insisted on the right to make payments to Candee, Davey, and Koessler in the event of default by DuBeau and Nessan. DuBeau and Nessan subsequently entered into written agreements to this effect with Davey and Koessler. Specifically, Davey and Koessler granted

3

Connecticut Mutual the right, "at its election and without obligation," to cure any default by DuBeau and Nessan.

DuBeau and Nessan immediately experienced cash flow problems with the project. DuBeau and Nessan had to borrow more money from Connecticut Mutual in order to make the 1982 payments on the underlying contracts for deed. This happened again in 1983. Later in 1983, DuBeau and Nessan advised Connecticut Mutual that the cash flow situation was not improving and that they intended to default on both the land contracts and their contract with Connecticut Mutual.

DuBeau and Nessan offered Connecticut Mutual a deed in lieu of foreclosure but Connecticut Mutual insisted on judicial foreclosure. On April 23, 1984, DuBeau and Nessan signed a settlement agreement with Connecticut Mutual in which they agreed to foreclosure by default. Connecticut Mutual waived its right to a deficiency judgment. The settlement agreement did not provide for any assumption by Connecticut Mutual of DuBeau's and Nessan's debt on the three underlying contracts for deed. Connecticut Mutual bought the property at the foreclosure sale on September 12, 1984. On November 6, 1984, DuBeau and Nessan gave Connecticut Mutual a quitclaim deed to their remaining interest in the three parcels of land.

Connecticut Mutual made payments on the underlying contracts for deed until July 1987, when it notified Davey and Koessler that it intended to tender the property back to them. Davey and

4

Koessler accepted possession and then filed the present lawsuit against DuBeau, Nessan, and Connecticut Mutual.

Davey and Koessler alleged that Connecticut Mutual had assumed the debt of DuBeau and Nessan. They based this theory on the allegations that: (1) the quitclaim deed amounted to an assignment of all of DuBeau's and Nessan's right, title, and interest in the property; and (2) Connecticut Mutual's conduct in making payments on the contracts for deed from **1984** through **1987** indicated its intent to assume the underlying debt. Davey and Koessler asserted that by failing to in fact assume the debt, Connecticut Mutual breached its contract and also breached the implied covenant of good faith and fair dealing.

DuBeau and Nessan asserted cross-claims against Connecticut Mutual in which they, too, sought to hold it liable for the underlying debt on the contracts for deed. DuBeau and Nessan based these cross-claims on the allegation that Connecticut Mutual had intended to acquire outright ownership of the property from the very beginning of the operation and that the negotiations leading up to the **1984** settlement agreement had, therefore, contemplated that Connecticut Mutual would be assuming the underlying debt on the three contracts for deed. DuBeau and Nessan asserted that these facts supported actions for breach of contract and breach of the implied covenant of good faith and fair dealing.

Connecticut Mutual moved for summary judgment on all of the claims against it. It argued that it acquired only an equity

interest at the foreclosure sale, that the quitclaim was inoperative to transfer DuBeau's and Nessan's underlying debt, and that the parol evidence rule barred any evidence about the negotiations leading up to the **1984** settlement agreement. The District Court granted summary judgment for Connecticut Mutual on all of the claims against it. All of the other parties appeal from this summary judgment order.

The issue on appeal is whether the District Court erred when it ruled that all claims against Connecticut Mutual failed due to the absence of any contractual obligation by Connecticut Mutual to assume the debts of DuBeau and Nessan. Because the appellants take very similar positions on appeal, we discuss the Davey and Koessler claims together with the DuBeau and Nessan claims.

**I**

**THE BREACH OF CONTRACT ACTIONS**

All of the appellants argue that Connecticut Mutual assumed a contractual duty to make payments on the underlying contracts for deed, either by virtue of the quitclaim deed from DuBeau and Nessan or by virtue of Connecticut Mutual's conduct in making those payments from **1984** to **1987.** They concede that Connecticut Mutual never expressly agreed in writing to assume the underlying debt. In order to succeed, then, they must show that in some other way Connecticut Mutual assumed the contractual obligations of DuBeau and Nessan.

An "assignment" of contractual rights is not the same as an '(assumption" of contractual obligations. All of the parties agree that generally "[t]he assignee of an executory contract does not, merely by accepting the assignment, or by succeeding to the property subject to the contract, assume the obligations imposed by the contract on the assignor." *Thompson* v. *Lincoln Nat. Life Ins. Co.* (1943), 114 Mont. 521, 527-28, 138 P.2d 951, 954. The parties disagree about whether an assignment actually occurred in this transaction; Connecticut Mutual argues that neither the foreclosure sale nor the quitclaim deed operated as an assignment. Because this case comes to us on appeal from an order of summary judgment we assume, without deciding, that an assignment occurred. We turn to the question of whether there was also an assumption.

The appellants argue that although an assumption must typically be expressed, in the proper circumstances it may be implied by the conduct of the parties. They cite the following language in *Thompson*:

> The dissent perforce admits the undeniable rule that the assignment of a contract does not ordinarily operate to cast the contract liabilities upon the assignee in the absence of an assumption thereof by him. The dissent further says, what is obvious, that the assignee may assume the assignor's liabilities, <u>that under certain circumstances and conduct the law will imply such assumvtion</u>, and that he may not enforce the contract without performing its terms. [Emphasis added.]

*Thompson,* 138 P.2d at 955-56.

7

In *Thompson*, the buyer's estate sued the seller's assignee for damages resulting from the assignee's conveyance of the subject property to a third party without protecting the original buyer's rights. The instrument of assignment was silent on the question of assumption of liabilities. The buyer argued that the assignee's conduct gave rise to an assumption by implication. *Thompson*, 138 P.2d at 953-54.

The majority of this Court, after stressing the general rule that the assignee is not bound in the absence of an express assumption, *Thompson*, 138 P.2d at 954, suggested that in the appropriate case an assumption might arise by implication, *Thompson*, 138 P.2d 956. However, the majority concluded that under the facts of that case no implied assumption had occurred. *Thompson*, 138 P.2d at 956. Thus, the suggestion in that case that an assignee may assume contractual obligations by implication was purely *dicta*. We have never applied it in subsequent real estate cases to find an assumption of the assignor's contractual liabilities.

The appellants also cite *Massey-Ferguson Credit Corporation v. Brown* (1977), 173 Mont. 253, 567 P.2d 440, for the proposition that an assumption of contractual duties may be implied. *Massey-Ferguson* was not a real estate case: it involved a sale of goods that was subject to Article 9 of the Uniform Commercial Code. That distinction is significant.

8

The American Law Institute has recognized that real estate transactions are qualitatively different from other transactions:

(2) Unless the language or the circumstances indicate the contrary, the acceptance by an assignee of . . . an assignment operates as a promise to the assignor to perform the assignor's unperformed duties, and the obligor of the assigned rights is an intended beneficiary of the promise.

*Caveat:* The Institute expresses no opinion as to whether the rule stated in Subsection (2) applies to an assignment by a purchaser of his rights under a contract for the sale of land. [Emphasis added.]

Restatement (Second) of Contracts § 328 (1979). Professor Williston explained the difference as follows:

It must be conceded, however, that at least in regard to contracts for the sale of land the great majority of decisions strongly take the position that the assignee of the purchaser does not become bound to the vendor for the price in the absence of an express assumption of the duty in his contract with the assignor. The analogy to the transfer of mortgaged land has doubtless been influential. [Emphasis added.]

3 Samuel Williston, A Treatise on the Law of Contracts § 418A at 109 (Walter **H.E.** Jaeger, ed., 3d ed. 1960).

The Wisconsin Supreme Court elaborated on this rule in *Peterson* v. *Johnson* (1972), 201 N.W.2d 507. The court said:

The cases which analyze the foundations for the rule base their holding on the lack of contractual privity between the vendor and the assignee of the vendee's interest. In the case of a bare assignment, there is privity of estate between the vendor and the assignee but not of contract. The obligation to pay is not a covenant running with the land. It is a personal obligation based on contract and enforceable only against those who have a contractual obligation to pay the purchase price.

In order for an assignee [of a land contract] to be personally liable for a deficiency judgment, it is

9

necessary either that he negotiate a contract directly with the vendor, producing a novation, or that he enter into an <u>express agreement</u> with the purchaser assuming the contractual obligation to pay. Under the second alternative, while there would be no privity of contract with the vendor in the common law sense, the assignee would be liable to the vendor under the third-party beneficiary theory.

*Peterson,* 201 N.W.2d at 509.

We agree that there can be no implied assumption of contractual liabilities in real estate transactions. Because of the complexity of these transactions, the large amounts of money that are typically involved, and the customary presumption that the only obligations are those which have been expressed, a rule that would permit the inadvertent assumption of debt is inappropriate. The appellants have conceded that Connecticut Mutual did not expressly assume the underlying debt, and we reject their theory that an assumption may arise by implication. Thus, we conclude as a matter of law that Connecticut Mutual had no contractual obligation to continue to make payments on the underlying contracts for deed.

We hold that the District Court did not err when it granted summary judgment to Connecticut Mutual on all of the breach of contract claims lodged against it.

## II

### THE BAD FAITH ACTIONS

The appellants also pled bad faith claims against Connecticut Mutual. Under *Story v. City of Bozeman* (1990), 242 Mont. 436, 450-51, 791

P.2d 767, 775-76, bad faith is actionable in an ordinary contract action. However, we have already concluded that there was no contract between Davey-Koessler and Connecticut Mutual. Therefore, there was no implied covenant of good faith and fair dealing between Davey-Koessler and Connecticut Mutual, and accordingly no action for breach of the covenant.

DuBeau and Nessan, however, did have a contract with Connecticut Mutual in the form of the 1984 settlement agreement. They cite *Nicholson v. United Pacific Insurance Co.* (1985), 219 Mont. 32, 42, 710 P.2d 1342, 1348, for the proposition that a person breaches the implied covenant of good faith and fair dealing by acting "arbitrarily, capriciously, or unreasonably." A majority of this Court overruled that aspect of *Nicholson* in **Story,** when it held that the conduct required by the implied covenant of good faith and fair dealing is "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *Story,* 791 P.2d at 775. However, the Dubeau-Nessan bad faith claim fails under either standard.

Connecticut Mutual did not breach the implied covenant. It told DuBeau and Nessan it was <u>considering</u> taking a deed in lieu of foreclosure but then decided to proceed with strict judicial foreclosure. Although DuBeau and Nessan have complained of Connecticut Mutual's failure to advise them specifically that it had rejected their offer of a deed in lieu of foreclosure, its

11

insistence on strict judicial foreclosure and the terms of the 1984 settlement agreement itself was sufficient to indicate to DuBeau and Nessan that Connecticut Mutual would not be acquiring the property outright.

As the District Court explained in its memorandum and order:

> It is obvious that at the time the purchase transaction was put together everyone thought that land values would continue to rise. Everyone was concentrating on the upside potential; no one was looking at the downside potential, except, perhaps the Connecticut Mutual legal department. Instead of becoming an owner in the real estate, Connecticut Mutual took an option. It never exercised the option. Instead of taking a deed in lieu, it foreclosed on DuBeau-Nessan's purchaser's interest and protected its interest in the subject real estate by making payments, until such time as it became apparent that it was throwing good money after bad and it would never recoup its investment. When the bottom fell out of the real estate market, and Connecticut Mutual walked away, it lost a large amount of money - its original investment, the substantial improvements to the property, as well as the annual payments it made for several years on the property. It had, however, done everything it could to protect itself against incurring further losses. It should be noted that DuBeau and Nessan were experienced, sophisticated agricultural real estate professionals and investors. They, as well as the other parties to this lawsuit, entered into these transactions upon advice of counsel. It is clear that what happened in this case is that no one anticipated the sudden drop in the prices of agricultural land and everyone got caught short. The way the transaction was structured, Connecticut Mutual could legally walk away without incurring further losses.

We agree. Connecticut Mutual merely took advantage of the structure of the transaction as established by an agreement DuBeau and Nessan executed while represented by counsel. This conduct violated neither the *Nicholson* "arbitrary, capricious, or unreasonable" standard, nor the *Story* "dishonesty or commercial

12

unreasonableness" standard, and therefore, did not constitute bad faith.

We hold that the District Court did not err when it granted summary judgment on all of the bad faith claims lodged against it.

The order and judgment of the District Court are affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices