No.    91-484 and 91-575

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

WAYNE V. KELLY,

       Petitioner and Appellant,

  -vs-

STATE COMPENSATION MUTUAL
INSURANCE FUND/BELT PUBLIC SCHOOLS,

       Defendant, Employer and Respondent.

APPEAL FROM:   On Appeal from the Workers' Compensation Court
              The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       Antonia P. Marra, Bell & Marra, Great Falls, Montana

       For Respondent:

       William O. Bronson, James, Gray & McCafferty, Great
       Falls, Montana

FILED

AUG 13 1992

Filed: CLERK OF SUP...
STATE OF MON...

Submitted on Briefs:  May 7, 1992

Decided:  August 13, 1992

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Claimant and appellant, Wayne V. Kelly (Kelly), appeals from two judgments of the Workers' Compensation Court which ruled in favor of the insurer, State Compensation Mutual Insurance Fund (the State Fund). We affirm.

## FACTS

Kelly suffered three injuries arising out of and in the course of his employment while working as a bus driver for the Belt School District. Kelly injured his neck on May 14, 1986; his back on November 11, 1986; and his neck again on November 21, 1987. At the time of Kelly's injuries, his employer was insured under Plan III of the Workers' Compensation Act.

In addition to driving the Belt Public School bus, Kelly participated in various concurrent employment situations. He was a vendor/stocker for Frito-Lay and Nabisco food companies, a theater projectionist and manager, a bagger/carry-out at Malmstrom Air Force Base Commissary, and a self-employed wood cutter. As a result of his May 1986 injury, Kelly was unable to work ten weeks during the summer of 1986. Kelly lost no time from work as a result of the November of 1986 injury. Kelly failed to return to any of his occupations following the November 21, 1987, injury.

As a result of the 1987 injury, Kelly received temporary total disability benefits from November of 1987 until early June of 1990 when his benefits were terminated because the Vocational Rehabilitation Specialist designated by the State Fund determined that Kelly could obtain alternative employment.

2

The Workers' Compensation Court found Kelly permanently partially disabled as a result of the November 1987 injury. Kelly receives impairment benefits, retroactive to September 1988, for his thirty-five percent impairment rating. Kelly also receives wage supplements in addition to his impairment award. The Social Security Administration also determined that Kelly was eligible for social security disability benefits.

PROCEDURAL HISTORY

This case is before us on consolidated appeals. First, as a result of Kelly's November 21, 1987, injury, the State Fund designated a rehabilitation provider to evaluate Kelly's rehabilitation options pursuant to § 39-71-1012, MCA (1987). The provider determined that the appropriate option for Kelly was to "return to a related occupation suited to the claimant's education and marketable skills." Section 39-71-1012(c), MCA (1987). Kelly contested this determination and the Department of Labor and Industry (the Department) designated a rehabilitation panel to review the provider's recommendation. The panel issued a report in accord with the provider's initial determination. The Department held a hearing, at Kelly's request, to review the panel's determination. On December 28, 1990, the Department entered its Findings of Fact, Conclusions of Law, and Order concurring in the panel's findings. Kelly appealed the Department's order to the Workers' Compensation Court which affirmed the Department's Order on September 12, 1991. Kelly appeals that decision to this Court.

Second, Kelly filed a separate petition for a hearing before

3

the Workers' Compensation Court to resolve disputes related to his 1986 injuries. This petition also referenced matters concerning the 1987 injury. The court held the hearing on March 1, 1991, and issued its Findings of Fact, Conclusions of Law, and Order on September 12, 1991, denying all of the relief Kelly requested. The Workers' Compensation Court ruled: that Kelly is permanently partially disabled; that Kelly reached maximum healing after the May of 1986 injury but prior to the November of 1987 injury; that the State Fund is not required to pay permanent partial disability benefits to Kelly for the 1986 injuries; that Kelly is not entitled to any lump sums; that Kelly is not entitled to an impairment award for the 1986 injuries; and that Kelly is not entitled to a penalty or attorney fees. Kelly appeals that decision to this Court.

ISSUES

Kelly presents several issues for our review which we rephrase as follows:

1. Whether substantial credible evidence supported the Workers' Compensation Court's finding that Kelly reached maximum healing after the May 1986 injury but prior to the November of 1987 injury.

2. Whether substantial credible evidence supports the Workers' Compensation Court's findings that Kelly is permanently partially disabled, rather than permanently totally disabled, as a result of the 1987 injury and that § 39-71-1012(c), MCA (1987), was the appropriate rehabilitation option for Kelly.

3. Whether the Workers' Compensation Court erred in denying

4

Kelly's request for the court to assess penalties and award Kelly attorney fees?

## STANDARD OF REVIEW

This Court has set forth the appropriate standard of review in appeals from the Workers' Compensation Court. This Court's function is not to reweigh the evidence. Our function is to determine if the Workers' Compensation Court's findings of fact and conclusions of law are supported by substantial credible evidence in the record. We will uphold the Workers' Compensation Court's decision if substantial credible evidence supports it. Nelson v. Semitool, Inc. (1992), ___ Mont. ___, ___, 829 P.2d 1, 3.

## I.

Whether substantial credible evidence supported the Workers' Compensation Court's finding that Kelly reached maximum healing after the May 1986 injury but prior to the November of 1987 injury.

The underlying question in this appeal is whether Kelly's May 1986 or his 1987 injury proximately caused his current disability. Both the State Fund and Kelly agree that Kelly suffered injuries to the cervical area of his spine on two separate occasions. The parties disagree as to which injury caused his present disability. The State Fund maintains, and the Workers' Compensation Court agreed, that Kelly reached maximum healing after the May 1986 injury but prior to the November 1987 injury, rendering the November 1987 injury the cause of Kelly's present disability. Kelly contends that the 1987 injury merely aggravated his May of 1986 injury, rendering the May 1986 injury the cause of his present

5

disability. If the lower court determined that the May 1986 injury proximately caused the current disability, Kelly would be entitled to more benefits than if the court determined that the 1987 injury proximately caused his current disability. Lee v. Group W Cable TCI of Montana (1990), 245 Mont. 292, 295, 800 P.2d 702, 704.

The evidence in this case supports the Workers' Compensation Court's decision that Kelly reached maximum healing after the May 1986 injury, but prior to the 1987 injury, rendering the law in effect in 1987 applicable. Kelly missed only ten weeks of work following the May 1986 injury. He returned to work at all but one of his concurrent employment situations until the 1987 injury, nearly one and one-half years later when he discontinued all employment.

Kelly contends that the lower court's finding that he reached maximum healing before the 1987 injury was not supported by substantial credible evidence. We disagree. The rule in Belton v. Carlson Transport (1983), 202 Mont. 384, 385-86, 658 P.2d 405, 406, controls this situation even though Belton dealt primarily with the issue of which insurance carrier is at risk when a worker suffers more than one compensable work-related injury. Belton's maximum healing rule can be applied in cases such as the one at bar to determine which injury proximately caused the claimant's current disability. Lee, 245 Mont. at 296, 800 P.2d at 705.

The lower court was presented with medical testimony supporting its decision that Kelly reached maximum healing prior to the 1987 injury.

6

> Maximum healing means that following a compensable injury
> a claimant has reached a point constituting the end of a
> healing period.  It does not mean the person is free of
> symptoms such as pain or objective signs.

Stangler v. Anderson Mayers (1987), 229 Mont. 251, 255, 746 P.2d 99, 101, citing Belton v. Carlson Transport (1983), 202 Mont. 384, 658 P.2d 405.  The record before us includes testimony from Dr. Verson Kirk and Dr. William Labunetz.  After a follow-up visit in August 1987, Dr. Kirk reported that Kelly was functioning well and had been stable for approximately one year.  Additionally, Dr. Labunetz, who began treating Kelly in September 1987, reported that Kelly was not disabled from driving the Belt Public School bus at that time, approximately two months prior to the November 1987 injury which prevented Kelly from participating in any of his employment situations.

The Workers' Compensation Court found that the doctors' testimony indicated that Kelly reached maximum healing following the May 1986 injury.  Although Kelly missed work for approximately ten weeks after the May 1986 injury, he eventually returned to all of his occupations with one exception; he discontinued his employment with Nabisco.  Kelly indicated that he continued to experience pain while he engaged in his employment.  However, Kelly also testified that the 1987 injury was far worse than the May 1986 injury.  Based on the foregoing, we hold that substantial credible evidence exists to conclude that Kelly reached maximum healing prior to the 1987 injury.  Therefore, Kelly's 1987 injury proximately caused his present disability and the Workers' Compensation Court did not err in so holding.

7

II.

Whether substantial credible evidence supports the Workers' Compensation Court's findings that Kelly is permanently partially disabled, rather than permanently totally disabled, as a result of the 1987 injury and that § 39-71-1012(c), MCA (1987), was the appropriate rehabilitation option for Kelly.

Kelly contends that the evidence supports a finding of permanent total disability rather than permanent partial disability. Section 39-71-116(15), MCA (1987), defines permanent total disability as:

> [A] condition resulting from injury as defined in this chapter, after a worker reaches maximum healing, in which a worker is unable to return to work in the worker's job pool after exhausting all options set forth in 39-71-1012.

In order to qualify as permanently totally disabled, Kelly was required to show that after exhausting all options in § 39-71-1012, MCA (1987), that he remained unable to return to work in his job pool. Kelly failed to meet this burden.

Section 39-71-1012, MCA (1987), sets forth the appropriate rehabilitation options:

> **Rehabilitation goal and options.** (1) The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs.
>
> (2) The first appropriate option among the following must be chosen for the worker:
>
> (a) return to the same position;
>
> (b) return to a modified position;
>
> (c) return to a related occupation suited to the claimant's education and marketable skills;

8

(d)   on-the-job training;

(e)   short-term retraining program (less than 24 months);

(f)   long-term retraining program (48 months maximum); or

(g)   self-employment.

(3)   Whenever possible, employment in a worker's local job pool must be considered and selected prior to consideration of employment in a worker's statewide job pool.

Section 39-71-1012, MCA (1987). A worker's job pool includes jobs available for which a worker is qualified, consistent with the worker's age, education, vocational experience and aptitude, and physical limitations. Section 39-71-1011(7)(a), MCA (1987).

After Kelly's 1987 injury, he failed to return to any of his prior employment situations. Since the explicit goal of the Workers' Compensation Act in 1987 was to return workers to employment situations with minimal retraining, § 39-71-1012, MCA (1987), the State Fund designated a rehabilitation specialist to evaluate Kelly. The specialist determined that option (c) under § 39-71-1012, MCA (1987), was the appropriate option. Option (c) states that Kelly should return to a related occupation suited to his education and marketable skills. This decision was affirmed by the appointed rehabilitation panel, the Department of Labor and Industry, and the Workers' Compensation Court. Kelly maintains this decision was error as he is unable to return to work due to pain and inability to perform tasks for more than a couple of hours at a time.

In the instant case, Kelly's doctors, therapists, the rehabilitation specialist, and a Rehabilitation Panel determined

9

that Kelly could engage in light duty work. Based upon Kelly's age education, experience, aptitude, physical capabilities and limitations, various job position descriptions were selected as those that Kelly could perform. This list included positions as a central office operator, a bookkeeper II, a receptionist and a clerk/typist. Kelly's own physician reviewed these job descriptions and approved them all except for the clerk/typist position, indicating that Kelly should have brief breaks from sitting if performing this job. We note that Kelly took a typing test at Job Service and during a five minute time span typed fifty words-per-minute with two errors.

Further, the record reflects that due to discrepancies in Kelly's reported restrictions and limitations, two private investigators monitored Kelly's activities. The private investigators observed and video-taped Kelly involved in various activities including: driving a car, bending, stooping, unloading wood, operating a tractor, and pushing a car by hand. Additionally, the private investigators indicated that Kelly made numerous trips on rough unkept mountain roads driving a flatbed truck loaded with wood. These trips sometimes lasted over several hours which Kelly successfully accomplished. After reviewing the record, we find that substantial credible evidence supports the court's findings.

III.

Whether the Workers' Compensation Court erred in denying Kelly's request for the court to assess penalties and award Kelly

10

attorney fees?

Kelly asserts that the lower court erred in refusing to impose a penalty on the insurer and in failing to award his costs and attorney fees. Kelly argues that the State Fund's adjustment of his claims was unreasonable. Kelly argues that the State Fund acted unreasonably in failing to disburse Kelly's impairment award immediately after he was given an impairment rating in 1988. However, Kelly failed to present evidence that the State Fund unreasonably refused to pay the impairment award.

Additionally, Kelly contends that the Workers' Compensation Court erred in refusing to award his costs and attorney fees. In some cases, if the claimant is successful against the insurer, the claimant is allowed costs and attorney fees. Sections 39-71-611 and -612, MCA (1987). As Kelly was unsuccessful below and on appeal, he is not entitled to costs and attorney fees. Substantial credible evidence exists supporting the lower court's denial of penalties, costs, and attorney fees. Therefore, we cannot overturn its decision. Affirmed.

John Conway Harrison  
Justice

We Concur:

J. A. Turnage  
Chief Justice

Justices

11

August 13, 1992

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Antonia P. Marra
Bell & Marra
9 Third St. No.
Great Falls, MT 59401

William O. Bronson
James, Gray & McCafferty
615-2nd Ave. No.
Great Falls, MT 59401

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy