95-449

No. 95-449

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


BRETT BRINEY,

Petitioner and Appellant,

v.

PACIFIC EMPLOYERS INSURANCE COMPANY,

Respondent and Insurer

for

STAUFFER CHEMICAL COMPANY,

Employer.


APPEAL FROM:    Workers' Compensation Court, State of Montana
                The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Andrew D. Huppert; Lewis, Huppert & Slovak;
Great Falls, Montana

For Respondent:

Brendon J. Rohan; Poore, Roth & Robinson;
Butte, Montana


Submitted on Briefs: January 16, 1997

Decided:   June 24, 1997
Filed:

_____

Clerk


Justice Terry N. Trieweiler delivered the opinion of the Court.


The claimant, Brett Briney, filed an amended petition in the Workers' Compensation Court for the State of Montana in which he sought partial disability benefits as a result of injuries he sustained during the course of his employment with Stauffer Chemical Company on May 24, 1981. In response, Stauffer's insurer, Pacific Employers Insurance Company, denied that Briney's disability was a result of his May 24, 1981, injury, and affirmatively alleged that Briney's disability resulted from a series of events, some of which occurred during the course of his employment and some of which occurred outside the course and scope of his employment. Following trial, the Workers' Compensation Court found that Briney had not proven a causal relationship between his work-related injury and his current disability, and therefore, entered judgment for the insurer. Briney appeals. We reverse the judgment of the Workers' Compensation Court.

The following two issues are raised on appeal:

1. Was there substantial evidence to support the Workers' Compensation Court's finding that Briney's current disability is not causally related to the injury that he sustained during the course of his employment on May 24, 1981?

2. Is Briney entitled to attorney fees, costs, and the imposition of a twenty percent penalty pursuant to    39-71-611 and -2907, MCA?

FACTUAL BACKGROUND

On May 24, 1981, Brett Briney was employed in the furnace department as a precipitator operator by Stauffer Chemical Company in Butte, Montana. His job was to keep the precipitator running at maximum efficiency by removing and dumping the dust and waste product twice during each shift, and by removing slag which accumulated on the unit. On that date, slag had formed around the rim of the filter on the number one precipitator, so he began to "rod out" the precipitator with a steel bar when he heard a pop and felt pain in his low back and legs. He had to be assisted from the area, and was taken to the hospital where he was treated by the emergency room physician with muscle relaxants and bed rest, and told to see an orthopedic surgeon.

In response to that advice, Briney saw Charles R. Canty, M.D., on May 29, 1981. After examining Briney, Dr. Canty diagnosed a probable herniated nucleus pulposus or disc extrusion in the lumbosacral portion of Briney's lower back. Dr. Canty treated him conservatively and after noting no neurological deficit, allowed him to return to work on June 22, 1981.

Briney testified that although he has had good days and bad days since his return to work in 1981, he has never been completely pain free. The proof established that complaints of pain in his lower back and legs were particularly noted following

numerous work-related and nonwork-related incidents which caused stress to Briney's lower back. He was treated by several physicians during the years following his return to work, and missed work on occasion due to treatment for back complaints, but was able to continue with his employment at Stauffer Chemical until October 1993.

In 1993, Briney underwent surgical treatment of a pilonidal cyst. Following that treatment, he was physically inactive for a period of time. Due to the inactivity, he was unable to continue the exercise regime he had followed for his back. His condition deteriorated, and he has been unable to return to his job at Stauffer Chemical since that time.

On October 21, 1994, Briney filed his original petition for emergency trial in which he alleged that he was totally disabled and entitled to reinstatement of temporary total disability benefits due to his 1981 injury. Although the insurer originally denied that Briney was totally disabled, on November 29, 1994, it agreed to classify his condition as an occupational disease and pay him total disability benefits. Following that agreement, Briney amended his petition and claimed an entitlement to 500 weeks of permanent partial disability benefits based on the loss of earning capacity he alleged was due to his back injury in 1981.

At the trial that was conducted in response to Briney's petition, the court heard testimony from Briney, two vocational rehabilitation consultants, and the defendant's claims adjuster. The only medical testimony was presented by deposition from Drs. Charles R. Canty, Patrick Robbins, Gary D. Cooney, and Michael Lahey. Based on these depositions, the Workers' Compensation Court found that Briney had not proven by a preponderance of the evidence that his 1981 injury was the primary cause of his current disability. It found that between 1981 and 1992 Briney suffered a number of injuries or incidents which caused acute episodes of low back pain, and that his current disability is a result of the cumulative effect of the multiple injuries or aggravations he has suffered over the years. On that basis, the court concluded that Briney was not entitled to an award of partial disability benefits pursuant to   39-71-703, MCA (1979).

## ISSUE 1

Was there substantial evidence to support the Workers' Compensation Court's finding that Briney's current disability is not causally related to the injury that he sustained during the course of his employment on May 24, 1981?

In reviewing a Workers' Compensation Court decision, this Court examines whether the court's findings of fact are supported by substantial credible evidence. Buckentin v. State Compensation Ins. Fund (1994), 265 Mont. 518, [520,] 878 P.2d 262, 263. If there is conflicting evidence, we

examine whether substantial evidence supports the Workers' Compensation Court, not whether the evidence might support contrary findings. Buckentin, 878 P.2d at 263. We review the Workers' Compensation Court's conclusions of law to decide whether the court's determination of the law is correct. Stordalen v. Ricci's Food Farm (1993), 261 Mont. 256, 258, 862 P.2d 393, 394. Where medical testimony is offered by deposition, this Court sits in as good a position as the Workers' Compensation Court to determine the weight of the medical testimony. McIntyre v. Glen Lake Irrigation Dist. (1991), 249 Mont. 63, 67, 813 P.2d 451, 454. Nonetheless, the medical testimony must be considered in the context of other testimony that the trial court did in fact have an opportunity to observe if it is relevant to medical issues. McIntyre, 813 P.2d at 454.

Caekaert v. State Fund (1994), 268 Mont. 105, 110, 885 P.2d 495, 498.

In addition to the standard of review which we must apply, it is important to note the parties' respective burdens of proof in the Workers' Compensation Court. The Workers' Compensation Court correctly concluded that the claimant has the burden of proving that he is entitled to workers' compensation benefits by a preponderance of the probative, credible evidence (citing Ricks v. Teslow Consol. (1973), 162 Mont. 469, 483, 512 P.2d 1304, 1312; DuMont v. Wickens Bros. Const. Co. (1979), 183 Mont. 190, 201, 598 P.2d 1099, 1105) . However, once the claimant has proven a work-related injury and produced evidence that that injury is a cause of a present disability, an insurer who alleges that subsequent events are the actual cause of the claimant's current disability has the burden of proving that allegation, which is in the nature of an affirmative defense, by a preponderance of the evidence. Walker v. United Parcel Serv. (1993), 262 Mont. 450, 456, 865 P.2d 1113, 1117.

In Walker, claimant suffered a back injury during the course of his employment in 1985. After a period of recovery, he returned to work until he quit his employment in 1992. The evidence was that from 1985 to 1992 he had periodic flare-ups or episodes of back pain.

The insurer in that case, as in this case, offered to pay him benefits based on an occupational disease, but refused to pay partial disability benefits based on his 1985 injury. The insurerþs position in that case, like the insurerþs position in this case, was that his disability was due to subsequent injuries following his 1985 injury.

The Workersþ Compensation Court in the Walker case, as in this case, found that, because claimant had reached maximum healing prior to subsequent flare-ups, the disability for which he sought benefits did not result from his 1985 injury.

The doctors who testified in the Walker case all agreed that the 1985 injury weakened the claimantþs back and made him more susceptible to injury. However, no doctor in that case would testify that the claimantþs disability for which he sought

benefits
would have existed had he not returned to work at UPS.  The Workersþ Compensation
Court, therefore, concluded that Walker had failed to carry his burden of proving that his
disability was related to his 1985 injury.

In our decision to reverse the findings of the Workersþ Compensation Court, we
first pointed out that equivocal testimony, i.e., testimony which was unable to relate
claimantþs disability to any particular event, was not substantial evidence.  We then
pointed out that, contrary to the Workersþ Compensation Courtþs findings, there was
more than one medical opinion expressed that Walkerþs condition was related to the 1985
injury and, finally, that it was not clear whether subsequent episodes of pain were due
to separate accidents or were simply aggravations of the 1985 injury.  Under those
circumstances, we held that:

Because we determine that the claimant has met his burden of proof
that his injuries sprang from a 1985 accident, the burden of proof
concerning any post-1985 accidents which permanently damaged claimantþs
back must fall upon the carrier.  Lee v. Group W Cable TCI of Montana
(1990), 245 Mont. 292, 800 P.2d 702;   39-71-703 et seq., MCA. . . .

. . . While alleging that six additional "accidents" occurred to
Walkerþs back, the carrier has not presented evidence that the incidents it
alludes to have met the legislatureþs definition of accident.  Further the
carrier has not shown that a causal connection exists between a post-1985
injury and Walkerþs current condition.  Thus, the carrier has not met its
burden concerning any subsequent accidents and the court did not have
substantial evidence from which to determine that Walkerþs injuries were
caused by a post-1985 accident.

Walker, 262 Mont. at 456, 865 P.2d at 1117.

It is with those rules in mind that we review the medical evidence in this case.

Dr. Canty concluded that Briney had reached maximum medical improvement on
June 22, 1981, and released him to return to work without restrictions.  However, when
his deposition was taken, he explained that he had placed no restrictions on Briney
because "then they wouldn't accept him back . . . he would have lost his job."  Based
on Briney's history of repeated problems since his return to work, it was clearly Dr.
Canty's opinion, in retrospect, that the 1981 injury had diminished Briney's ability to
perform heavy labor.  He testified that the magnetic resonance imaging studies done on
February 19, 1992, which disclosed herniated intervertebral discs at two levels of
Briney's lower back, were consistent with his findings ten years earlier and stated that
he had no disagreement with Dr. Cooney's opinion that the herniations resulted from the
1981 injury, or Dr. Robbins' opinion that Briney's current physical impairment was a
result of his 1981 injury.  He explained that alleviation of symptoms from a herniated
disc to the extent that the affected person can return to work, does not mean that

the disc
injury is cured.

Dr. Canty testified that the symptoms Briney complained of following incidents subsequent to 1981 were identical to those caused by his 1981 injury, and he expressed the opinion that the subsequent events were probably aggravations of the earlier injury. Although he did state that Briney probably would have been able to continue working if his back had not been aggravated, he gave the following significant testimony regarding causation:

Q.    And considering all of the information that you personally knew and what you've now been supplied with today regarding all these different work- and nonwork-related accidents that Mr. Briney suffered over the last 12 or 13 years, can you attribute Mr. Briney's current physical condition to any one particular injury during that 12- or 13-year period?

A.    Probably the most significant would be his initial injury.  [Referring to the injury that occurred on May 24, 1981.]

Dr. Canty explained that Briney's 1981 injury made him more susceptible to aggravation of his lower back and gave the following testimony regarding the impact of that injury on his ability to perform physical labor:

Q.    Given that situation, given the fact that you have stated that his current conditions are probably related to that 1981 injury, would you agree that that 1981 injury affected his ability to perform heavy-duty labor?

A.    I would say "yes".

Q.    And in fact, it diminished his ability to perform heavy-duty labor?

A.    Yes.

MR. HUPPERT:  That's all I have.

BY MR. ROHAN:

Q.    In and of itself without the other aggravations, did it diminish his ability to do heavy-duty work?

A.    I think in and of itself, it did encompass his ability to safely perform the heavy labor type things that would be required of him, that would ultimately be required of him.

The Workers' Compensation Court's findings completely ignore this direct opinion testimony from Dr. Canty and, instead, place emphasis on Dr. Canty's finding that Briney had reached maximum medical healing in June 1981 and that, in Dr. Canty's opinion, Briney's intervertebral disc had returned to its normal anatomical configuration at that point in time.  However, there is nothing about either of those facts which

precluded Briney's later deterioration based on his original injury, and it is apparent from Dr. Canty's unequivocal testimony that he attributes Briney's current disability to his original injury.

Dr. Patrick Robbins is an orthopedic surgeon who practices in Missoula and first saw Briney on March 2, 1992. Based on the MRI exam which was done in February of that year, and his own examination of Briney, he diagnosed degenerative disc disease between the fourth lumbar vertebra and first sacral vertebra.

On October 3, 1994, in response to an inquiry from Stauffer's insurer, he wrote that after reviewing Briney's medical records which had been provided by the insurer, and considering the patient's history, it was his opinion that Briney's current problems were a result of his 1981 work-related injury. In 1995, he concluded that Briney had sustained a ten percent physical impairment as a result of his back injury and that he should not return to manual labor.

During his deposition, after considering a complete list of the incidents following the 1981 injury in which Briney complained of aggravated back pain, Robbins testified, based on a reasonable degree of medical certainty, that Briney's current symptoms and disability are attributable to his 1981 injury. He also expressed the opinion that the ten percent impairment is directly attributable to the 1981 injury.

During cross-examination, when asked if Briney could have continued working following the 1981 injury absent aggravation of his back, he stated that it was "possible"; however, he repeated his opinion, this time based on a reasonable degree of medical probability, that it was the 1981 injury which caused Briney's current disability. He explained that in all probability the 1981 injury weakened Briney's back to the point where it was aggravated by various events subsequent to that time. During re-direct examination he repeated his opinion, based on a reasonable degree of medical certainty, that Briney's 1981 injury ultimately decreased his ability to perform heavy labor. The Workers' Compensation Court's disregard for Dr. Robbins' direct testimony, which was based on a reasonable degree of medical certainty, in favor of a temporary concession regarding a "possibility," simply ignores the totality of Dr. Robbins' testimony and is not based on substantial evidence.

Dr. Gary D. Cooney is a Missoula physician specializing in neurology. He first examined Briney on January 13, 1994, to evaluate him for pain in the lower back at the request of his family physician from Butte. Following his physical examination, and his review of Briney's MRI studies, he also diagnosed intervertebral disc herniations at L4-5 and L5-S1. He also responded in writing to an inquiry by Stauffer's insurer regarding the cause of Briney's current complaints, and expressed the opinion that they were

predominately related to his initial injury in May 1981. It was his opinion, during his
deposition, that the 1981 injury made Briney "significantly" more susceptible to additional
injuries and diminished his ability to perform heavy labor on a long-term basis. He also
agreed that Briney had sustained permanent physical impairment as a result of his 1981
injury.

Significantly, for purposes of a Walker analysis, when Dr. Cooney was asked during cross-examination whether subsequent injuries contributed to Briney's current disability, he testified that he had no opinion. He did state that the mere fact that Briney
had reached maximum medical improvement following his 1981 injury did not preclude the fact that he now had permanent physical impairment from that injury, even though he had no physical impairment at the time he was released to return to work. Finally,
contrary to the Workers' Compensation Court's finding that Dr. Cooney could not relate
Briney's current condition to his 1981 injury, he gave the following specific testimony:

[T]he most significant insult was the initial insult of this May of 1981, but
I donþt know that the effects of the subsequent injuries is necessarily
cumulative or that any of those subsequent injuries can clearly be shown to
have contributed to the appearance of the disc on the 1992 MRI.

If anything, Dr. Cooney's testimony clearly established that, in his opinion, the
1981 injury contributed to Briney's current condition, but that he could not say what effect subsequent events might have had on that condition.

Finally, Briney was examined on March 4, 1994, by Michael Lahey, M.D., another orthopedic surgeon in Missoula. Dr. Lahey's diagnosis was the same as those previously discussed. In his original report to the insurer, he stated that Briney's current
condition may be attributable to the 1981 injury with progressive deterioration since that
time accounting for his current disability. However, during his deposition, when a complete history of Briney's complaints and the incidents in which he was involved was
related to him, Dr. Lahey was unable to relate Briney's current disability to any specific
event. When he was asked whether each aggravation or injury subsequent to May 24, 1981, contributed to Briney's current physical condition, he said that he had no basis for
an opinion.

In summary, Drs. Canty, Robbins, and Cooney all expressed the opinion that Briney's 1981 low back injury was the principal cause of the long-term physical impairment which is the basis of his current disability claim. The burden then shifted to
the insurer to prove by a preponderance of the evidence that some intervening act actually
caused the claimant's current disability. After reviewing the entire record of

medical
testimony, we find no such evidence. At most, there is some discussion during cross-examination of witnesses of "possibilities." However, when balanced against the reasonable "medical certainty" or "medical probability" with which those same witnesses
testified during their direct examination, those "possibilities" do not amount to substantial
evidence sufficient to satisfy the insurer's burden of proof.

For these reasons, we conclude that when the Workers' Compensation Court found that a preponderance of the evidence established that a series of injuries or aggravations
over a ten-year period caused Briney's current disability, the Workers' Compensation Court erred. We conclude that the undisputed, substantial evidence establishes that Briney's current physical impairment and disability is primarily attributable to the injury
that he sustained during the course of his employment with Stauffer Chemical Company on May 24, 1981.

                            ISSUE 2
Is Briney entitled to attorney fees, costs, and the imposition of a twenty percent
penalty pursuant to    39-71-611 and -2907, MCA?
Section 39-71-611, MCA (1979), provides as follows:
In the event an insurer denies liability for a claim for compensation . . .
and the claim is later adjudged compensable by the workers' compensation
judge or on appeal, the insurer shall pay reasonable costs and attorneys'
fees as established by the workers' compensation judge.

Briney contends that since the insurer has denied that his current disability is related to his 1981 injury, he is entitled to attorney fees and costs if this Court determines
otherwise on appeal. We agree that under the facts and circumstances as set forth in the
prior portion of this opinion, Briney is entitled to attorney fees and costs pursuant to this
statute. The amount of those costs and fees should be determined by the Workers' Compensation Court after remand of this matter to that court.
Briney also contends that pursuant to    39-71-2907, MCA (1979), and our decision in Holton v. F.H. Stoltze Land & Lumber Co. (1981), 195 Mont. 263, 637 P.2d 10, he is entitled to a statutory penalty equal to twenty percent of his ultimate award for partial
disability.
Section 39-71-2907, MCA (1979), provides in relevant part that:
When payment of compensation has been unreasonably delayed or refused
by an insurer, either prior or subsequent to the issuance of an order by the
workers' compensation judge granting a claimant compensation benefits, the
full amount of the compensation benefits due a claimant, between the time
compensation benefits were delayed or refused and the date of the order
granting a claimant compensation benefits, may be increased by the
workers' compensation judge by 20%. The question of unreasonable delay
or refusal shall be determined by the workers' compensation judge . . . .

The insurer has not responded on appeal to Briney's contention that he is

entitled to costs, attorney fees, or the statutory penalty.

In Holton, there was no issue regarding claimant's injury or that it was related to his job. After he reached maximum medical healing, his own physician rated the degree of his permanent physical impairment at five percent. The insurer's physician rated his impairment at ten percent. It does not appear from the reported case that there was any disagreement about whether either of those ratings were a result of his job-related injury. However, the insurer refused to pay benefits based on either impairment rating without an agreement by claimant to settle his total claim for disability benefits. We held that where there was no legitimate basis for disagreeing that claimant had become physically impaired due to his work-related injury, and where the only question was the amount of disability benefits to which he was entitled, the insurer acted unreasonably as a matter of law when it withheld undisputed benefits pending a hearing on disputed benefits.

Although we hold that, after presentation of all the evidence, the defendant in this case has not satisfied its burden of proving by a preponderance of evidence that Briney's injury was caused by some event other than the accident he was involved in on May 24, 1981, the facts in this case were not beyond dispute prior to presentation of evidence by both parties. Whether, based on the facts in this case, Briney is entitled to a statutory penalty is a question to be decided, in the first instance, by the Workers' Compensation Court pursuant to the plain language of  39-71-2907, MCA (1979). We are aware, as a practical matter, that the same Workers' Compensation Court, which previously decided in favor of the insurer on the merits of this case, is unlikely to find, following our remand, that the insurer acted unreasonably, in spite of our conclusion that no substantial evidence supported the insurer's theory. However, we cannot conclude as a matter of law, based on the posture of this case at the time the trial commenced, that there was no dispute regarding Briney's entitlement to benefits and that his right to statutory penalty is, therefore, controlled by Holton.

For these reasons, we conclude that pursuant to  39-71-611, MCA (1979), Briney is entitled to an award of attorney fees and costs in amounts to be determined by the Workers' Compensation Court. Furthermore, following remand, the Workers' Compensation Court is to determine, based on the entire record, whether the insurer acted

unreasonably when it denied Briney's claim for partial disability benefits and whether he
is, therefore, entitled to a statutory penalty pursuant to    39-71-2907, MCA (1979).

This case is reversed and remanded to the Workers' Compensation Court for further proceedings consistent with this opinion.

                    /S/   TERRY N. TRIEWEILER


We Concur:

/S/   J. A.   TURNAGE
/S/   WILLIAM E. HUNT, SR.
/S/   JAMES C. NELSON
/S/   W. WILLIAM LEAPHART
/S/   KARLA M. GRAY